UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL K. LOVE, | ) | Case No. 1:09CV2703 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MARGARET BRADSHAW, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | **Report and Recommendation** |
| | ) | **of Magistrate Judge** |
| | ) | |
| | ) | |

Petitioner Michael K. Love ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Lake County, Ohio Court of Common Pleas conviction for murder with a firearm specification.  ECF Dkt. #1; ECF Dkt. #5, Ex. 7.  On April 30, 2010, Respondent Margaret Bradshaw ("Respondent") filed a Motion to Dismiss (Answer in the Alternative).  ECF Dkt. #5.  On June 23, 2010, Petitioner filed a reply brief.  ECF Dkt. #7.  On August 30, 2010, Petitioner filed a motion to stay proceedings and hold the instant petition in abeyance. ECF Dkt. #8. Respondent has not filed a brief in opposition to Petitioner's motion to stay proceedings.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice and DENY Petitioner's motion to stay:

---

[1] Petitioner is now housed at Grafton Correctional Institution, where Kimberly Clipper is the warden.  *See http://www.drc.ohio.gov/OffenderSearch/Search.aspx* (search Michael K. Love); *http://www.drc.ohio.gov/web/InstAddr.htm.*  "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004). Accordingly, the petition should be amended to name Kimberly Clipper as the respondent.

## I.    SYNOPSIS OF THE FACTS

The Eleventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Eleventh District Court of Appeals, the facts are:

> On August 22, 1998, appellant was at a bar named either Hellbusters or Hellraisers in Fairport Harbor, Ohio. Appellant, who is from Cleveland, Ohio, was at the bar as part of a promotional appearance for his rap music group, named Aftamaff. The bar was managed by one of his acquaintances from Cleveland, named Delmarcus Anderson (aka "Peanut"). Also at the bar were the other members of the group and several people he knew from his neighborhood in Cleveland. When he left the bar at closing time, about 2 a.m., appellant got into a car driven by John Turner, one of his friends from Cleveland. John Turner followed at least two other cars toward an after-hours party in Painesville. One car contained Marcus Perkins (aka "Boss"), Tomarve Smith, and Delmarcus Anderson. The other car contained Damon Anderson (aka "Long"), Richard Hayden (aka "Snoop"), Keith Bowles (aka "K.B."), and Jamal Russell (aka "Dred").

> As they passed a bar, named Nino's, in Painesville, one of the members of the lead car recognized a person he knew, a man identified only as "Choc," talking to police officers in front of Nino's. Also with "Choc" were Michael Mann and a man identified only as "Squeak" or "Squirrel." The lead car turned around the three [sic] at Nino's told them that they had been "jumped" by a group of men from Painesville, including Kenneth Johnson (aka "Dirty") and Antonio Rimmer (aka "Stickman"). They went to an apartment complex in Painesville, known as the Argonne Arms, where the attackers lived. Appellant's car followed.

> When appellant and John Turner entered the Argonne Arms complex, they saw "Boss," Marcus Perkins, being chased by a man carrying what looked like a sawed-off shotgun. The man with the gun turned out to be the eventual victim, Kenneth Johnson. Perkins was able to evade Johnson and was picked up by John Turner. At this point, they were attempting to leave the complex when they saw Damon Anderson and Richard Hayden kicking and stomping on a man that was lying on the ground. The man was Ollie Gipson, who later died from his injuries. Damon Anderson got back into the car and Richard Hayden continued to stomp on Ollie Gipson's head. John Turner pulled his car behind the other men's car and they saw Kenneth Johnson running towards Richard Hayden with a gun. Richard Hayden was able to knock Johnson's gun to the ground and the two began to tussle. Keith Bowles testified that he picked up the gun. The passengers of John Turner's car got out of the car, but ducked behind the open doors. John Turner and appellant testified that Johnson pointed the gun at their car, but did not fire. All of the witnesses testified that they heard many shots fired during the events.

> John Turner testified that he saw appellant run out of the car and heard shots. He did not see appellant fire a gun, but testified that appellant got back into the car and said to go. Damon Anderson testified that he saw appellant run up to where Johnson and

-2-

Hayden were scuffling and raise his arm, then he heard a pow, saw a small flash, and saw Johnson stop tussling. Appellant testified that he was very scared during the tussle and found a gun, a .380 left in Turner's car by appellant's brother. He testified that there were lots of shots being fired and lots of confusion surrounding the tussle. He testified that he was holding the gun, but did not point it and that it just went off. According to appellant, he did not realize that he had hit anybody. He testified that: "I'm not saying that I didn't fire it, I'm saying I find it very hard to believe that I killed somebody." He testified that he didn't intentionally fire the gun, but just "clutched up." When cross-examined about whether he fired the gun in self-defense, he answered "no, I was acting in fear."

The bullet entered Kenneth Johnson's left side and exited his left; it was never found. The bullet punctured his liver and severed his superior mesentery artery, which caused him to bleed to death.

As they were leaving the scuffle, Keith Bowles threw Johnson's gun in the trash and appellant threw his brother's gun in the trash. By that time, there were police at the scene. They briefly detained both cars, but let them leave. They all went back to the "keyhole," the dead end of East 117th street in their Cleveland neighborhood. There, appellant told many people that his gun "popped," but he did not know if he hit anybody.

Shortly after the shooting, appellant left the state to tour with his rap group. Damon Anderson retained an attorney and contacted the police to tell of his involvement with the deaths. The police wished to speak to appellant about his involvement, but he was out of state. Appellant learned that his name was "dirty" on the streets, meaning the police were looking for him. He was indicted by the Grand Jury while he was out of the state. He returned and testified that he attempted to contact the police. On October 16, 1999[2], the police apprehended him after executing an arrest warrant at his girlfriend's house.

ECF Dkt. #5, Ex. 11 at 77-80.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court Proceedings

On September 25, 1998, the prosecuting attorney for Lake County, Ohio filed an indictment charging Petitioner with: (Count 1) murder in violation of Ohio Revised Code ("O.R.C.") §2903.02(A); and (Count 2) murder in violation of O.R.C. §2903.02(B).  ECF Dkt. #5, Ex. 1.  A jury found Petitioner not guilty of Count 1 and guilty of Count 2.  ECF Dkt. #5, Ex. 6.  Further, the jury found that a firearm specification applied.  *Id.*  On March 5, 1999, the trial judge sentenced Petitioner to a prison term of 15 years to life in prison.  ECF Dkt. #5, Ex. 7.  The trial judge ordered Petitioner to serve a consecutive 3 year term of imprisonment for the firearm specification.  *Id.*

---

2          This date appears to be incorrect.  Petitioner was sentenced before this date, on March 5, 1999.  *See* ECF Dkt. #5, Ex. 7.

-3-

## B.    Direct Appeal

On April 1, 1999, Petitioner filed a notice of appeal and thereafter filed an appellate brief

raising the following assignments of error:

> **FIRST ASSIGNMENT OF ERROR**
> DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
>
> **SECOND ASSIGNMENT OF ERROR**
> DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND HIS RIGHT
> TO DUE PROCESS OF LAW WHEN THE PROSECUTOR'S MISCONDUCT
> PREJUDICED THE DEFENSE.
>
> **THIRD ASSIGNMENT OF ERROR**
> DEFENDANT WAS DENIED A FAIR TRIAL BY THE ABUSE OF THE COURT'S
> DISCRETION WHEN THE COURT INSTRUCTED THE JURY ON THE ISSUE OF
> "FLIGHT"

ECF Dkt. #5, Ex. 8, 9.  On February 1, 2000, the state filed a brief in opposition.  ECF Dkt. 5, Ex.

10.  On May 14, 2001, the Eleventh District Court of Appeals affirmed Petitioner's conviction.  ECF

Dkt. #5, Ex. 11.

## C.    Motion for New Trial

On April 26, 2006, Petitioner filed a motion for a new trial with the Lake County Court of

Common Pleas.  ECF Dkt. #5, Ex. 12.  On May 3, 2006, Petitioner filed a motion requesting

findings of fact and conclusions of law.  ECF Dkt. #5, Ex. 13.  On May 8, 2006, the state filed a

response to Petitioner's motion.  ECF Dkt. #5, Ex. 14.  On May 16, 2006, Petitioner filed a reply.

ECF Dkt. #5, Ex. 15.  On May 23, 2006, the Lake County Court of Common Pleas denied

Petitioner's motion as untimely and meritless.  ECF Dkt. #5, Ex. 16.

## D.    Petition for Post-Conviction Relief

On November 9, 2006, Petitioner filed a petition for post-conviction relief with the Lake

County Court of Common Pleas.  ECF Dkt. #5, Ex. 17.  The petition raised the following

assignments of error:

> I.    EXCULPATORY EVIDENCE.  AS A MATTER OF LAW, THE EIGHTH
> AND FOURTEETH [SIC] AMENDMENT TO THE USC. AMENDMENTS
> [SIC] PROHIBITS PUNISHEMENT [SIC] FOR ONE WHO IS INNOCENT
> OF A CRIME FOR WHICH HE RECEIVED A CONVICTION.  THE
> CENTRAL PURPOSE OF ANY SYSTEM OF CRIMINAL JUSTICE IS TO
> CONVICT THE GUILTY AND FREE THE INNOCENT EVEN THOUGH
> PETITIONER'S EVIDENCE WENT UNCLAIMED AT TRIAL BUT
> RATHER 8 YEARS LATER, THE SHOWING OF INNOCENCE AND

INDEED HIS CONSTITUTIONAL CLAIM FOR RELIEF BASED UPON THAT SHOWING CAN BE CORRECTED IN THE LIGHT OF THE PREVIOUS PROCEEDINGS.

II.  AS A MATTER OF CONSTITUTIONAL ERROR THE STATE VIOLATED THE PETITIONER'S RIGHT OF DUE PROCESS BY KNOWINGLY USING FALSE TESTIMONY AND ALLOWING THAT FALSE TESTIMONY TO GO UNCORRECTED AS A MATTER OF LAW, REVIEWING EXHIBITS (A), (B) & (C), THE PRE-HOSPITAL CARE REPORT, THE AUTOPSY REPORT AND THE LAWS OF BALLISTICS ACCORDING TO THE CALIBRE OF BULLETS, THE FACTS CLERALY [SIC] PROVE IRREFUTABLY THAT THE CORONER'S DEPOSITION AND THE STATE'S WITNESS'S TESTIMONY WAS FABRICATED. THE PROSECUTION'S MAIN CONTENTION THAT THE FATAL WOUND WAS CAUSED BY THAT OF A 380 WAS INDEED PERJURED TESTIMONY.

III.  THE PETITIONER WAS DENIED EQUAL PROTECTION UNDER THE LAW WHEN THE COURT ALLOWED THE PROSECUTION TO ADD ON TO THE INDICTMENT L.I.O.'S CAUSING IT TO BECOME MULTIPLICIOUS.  THE RESULT BEING, THE PETITIONER WAS PROSECUTED FOR THE SAME OFFENSE TWICE SUBJECTING HIM TO MULTIPLE PUNISHMENTS IN THE SAME PROCEEDING FOR THE SAME OFFENSE. 1) PETITIONER'S CONVICTION WAS AGAINST THE MANIFESTED [SIC] WEIGHT OF THE EVIDENCE 2) THE TESTIMONY WAS A VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS.  3) NEVERTHELESS, PETITIONER IS STILL ENTITLED TO FEDERAL HABEAS REVIEW OF THIS ISSUE IF HE CAN DEMONSTRATE CAUSE FOR THE PROCEDURAL DEFAULT AND PREJUDICE RESULTED THEREFROM, OR IF HE CAN DEMONSTRATE THAT A FAILURE TO REVIEW HIS CLAIM WILL RESULT IN A MISCARRIAGE OF JUSTICE.

IV.  AS A MATTER OF LAW THE STATE DOES NEED TO PROVE INTENT TO COMMIT THE PREDICATED FELONY TO WHICH HOMICIDE IS A CONSEQUENCE BECAUSE, SPECIFIC INTENT TO ENGAGE IN CONDUCT OF THAT NATURE IS PART OF THE MENS REA ELEMENT OF PURPOSELY IN SUPPORT OF OHIO REVISED CODE 2903.02(B) MURDER: THE UNITED STATES SUPREME COURT UNDER THE COMMON LAW RULE RECOGNIZED THAT PROSECUTORS DO NOT NEED TO PROVE A CULPABLE MENTAL STATE WITH RESPECT TO THE MURDER BECAUSE INTENT TO KILL IS CONCLUSIVELY PRESUMED IF THE STATE PROVES INTENT TO COMMIT THE UNDERLYING FELONY.

V.  PROSECUTORIAL MISCONDUCT. PETITIONER WAS DENIED A FAIR TRIAL  AND EQUAL PROTECTION OF THE LAW WHEN THE COURT KNEW OF THE JEOPARDY.  IT WAS THE DUTY OF THE COURT TO SAFE GUARD THE PETITIONER'S RIGHTS WHEN THE JURY RETURNED WITH AN ACQUITTAL OF THE CHARGE OF COUNT ONE OF THE INDICTMENT THAT WAS THE SAME AS COUNT TWO WHICH VIOLATES PETITIONER'S CONSTITUTIONAL RIGHTS.

VI.  INEFFECTIVE ASSISTANCE OF COUNSEL.  THE TRIAL COUNSEL'S PERFORMANCE OR FAILURE TO PERFORM AT TRIAL FELL BELOW A REASONABLE OBJECTIVE STANDARD.  IF NOT FOR DEFENSE

COUNSEL'S ERRORS, CONFLICTS OF INTEREST AND LACK OF PREPARATION BEFORE AND DURING TRIAL, THE OUTCOME WOULD HAVE BEEN DIFFERENT.  AS A MATTER OF LAW, PETITIONER WAS ENTITLED TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE UNTIED STATES AND THE OHIO CONSTITUTION.  PETITIONER ASSERTS THAT DEFENSE COUNSEL NEVER HAD A VIABLE TRIAL STRATEGY AS RECOGNIZED BY THE TRIAL COURT AS WELL AS THE STATE AS IS EXPRESSED IN COURT CHAMBERS BY THE COURT.  DEFENSE COUNSEL ALSO FORGOT WHAT HER TRIAL DEFENSE WAS FOR HER CLIENT AT A CRITICAL STAGE DURING TRIAL.  THE PETITIONER EVENTUALLY FOUND HIMSELF DEFENDING HIMSELF AGAINST THE STATE CHARGES AND THE ERRORS COMMITTED BY HIS ATTORNEY THROUGH THE ENTIRE TRIAL.

VII.    DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL OR ASSISTANCE OF APPELLATE COUNSEL BECAUSE OF ERRORS OR OMISSIONS IN THE ISSUES PRESENTED FOR REVIEW. COUNSEL'S PERFORMANCE WAS SO DEFECTIVE AND DEFICIENT THAT THE FAILURE TO INVESTIGATE THE INDICTMENT, POLICE REPORTS, TRIAL TRANSCRIPTS AND JURY INSTRUCTIONS CAUSED THE APPEAL TO BE INEFFECTIVE.

VIII.   THE COURT ERRED IN ITS INSTRUCTIONS TO THE JURY IN REGARDS TO THE MERGER DOCTRINE AND ITS EXPLANATION OF THE CHARGES AGAINST THE PETITIONER.

IX.     THE COURT FAILED TO ADVISE THE PETITIONER OF HIS RIGHTS IN REGARDS TO 2967 28 [sic], POST-RELEASE CONTROL SANCTIONS.

ECF Dkt. #5, Ex. 17.  On December 1, 2006 Petitioner filed a second petition for post conviction relief, raising the same grounds as stated above.  ECF Dkt. #5, Ex. 18.  On December 1, 2006, the state filed a response to the petitions for post conviction relief.  ECF Dkt.#5, 19.  On December 27, 2006, Petitioner filed a supplemental brief.  ECF Dkt. #5, Ex. 20.  On January 18, 2007, the Lake County Court of Common Pleas denied the petitions, finding that they were "clearly untimely," his claims were barred by res judicata, and his claims were meritless.  ECF Dkt. #5, Ex. 21.

On February 16, 2007, Petitioner filed a notice of appeal.  ECF Dkt. #5, Ex. 22.  On April 6, 2007, Petitioner filed a brief on the merits in the Eleventh District Court of Appeals; he raised the following assignments of error:

1.    Love was denied equal protection under the law when the state was allowed to add Attempt on to the jury instruction broadening the indictment thereby prosecuting Love twice for the same offense using the same animus in violation of Amendment V and XIV of the U.S.C. Amend., O. Const. 1 Sec. 10.

2. Trial court committed error as Love's conviction was against the manifest weight of the evidence violating Love's constitutional right to due process under Amendment XIV and XIII of the U.S.C. Amend., O. Const. I Sec. 6, along with violating Ohio Rules of Court EC 7-13 (3).

3. The State Committed plain error in its instruction to the jury of the state not having to prove "intent" for the predicate felony under O.R.C. 2903.02(B) violating Love's due process rights Amendment XIV of the U.S.C. Amend., O. Const. I Sec. 18.

4. Love was denied effective assistance of trial counsel guaranteed him violating his due process rights under Amendment VI and XIV of the U.S.C. Amend., O. Const. I Sec. 10, along with violating Ohio Rules of Court R. 1.3, DR 1-102(A)(4); DR 6-101; DR 7-101 (A)(3); DR 7106 (C)(1); EC 4-5, 5-1, 7-9, 7-24, 7-25, 7-26.

5. Love was denied effective assistance of appellate counsel guaranteed him violating his due process rights under Amendment VI and XIV of the U.S.C. Amend., O. Const. I Sec. 10, along with violating Ohio Rules of Court R.1.3, EC 2-30; EC 4-5; EC 5-1; EC 7-4; EC 7-9.

ECF Dkt. #5, Ex. 23.  On April 20, 2007, the state filed a response brief.  ECF Dkt. #5, Ex. 24.  On May 2, 2007, Petitioner filed a reply.  ECF Dkt. #5, Ex. 25.  On November 23, 2007, the Eleventh District Court of Appeals affirmed the Lake County Court of Common Pleas' ruling.  ECF Dkt. #5, Ex. 26.

### E.    Delayed Motion to Reopen Appeal

On January 8, 2008, petitioner filed a delayed motion to reopen his direct appeal due to ineffective assistance of appellate counsel. ECF Dkt. #5, Ex. 27. On February 6, 2008, the state filed a response. ECF Dkt. #5, Ex. 28. On February 13, 2008, Petitioner filed a reply. ECF Dkt. #5, Ex. 29. On July 1, 2008, the Eleventh District Court of Appeals denied Petitioner's application to reopen his appeal. ECF Dkt. #5, Ex. 30. On July 30, 2008, Petitioner filed a motion for reconsideration. ECF Dkt. #5, Ex. 31. On October 27, 2008, the appellate court denied his motion. ECF Dkt. #5, Ex. 32.

On October 10, 2009, Petitioner filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #5, Ex. 33. On October 17, 2008, the state filed a response. ECF Dkt. #5, Ex. 34. On December 18, 2008, the Supreme Court of Ohio denied Petitioner's motion for delayed appeal. ECF Dkt. #5, Ex. 35.

-7-

### F.        Motion to Correct An Invalid Sentence

On March 28, 2008, Petitioner filed a "Motion to Correct An Invalid Sentence" in the Lake County Court of Common Pleas.  ECF Dkt. #5, Ex. 36.  On May 19, 2008, the state filed a response. ECF Dkt. #5, Ex. 37.   On May 22, 2008, the Lake County Court of Common Pleas denied Petitioner's motion. ECF Dkt. #5, Ex. 38.

### G.        Motion for Relief from Judgment

On July 15, 2008, Petitioner filed a motion for relief of Judgment or Order Pursuant to Civ. R. 60(B) and Crim. R. 56(B).  ECF Dkt. #5, Ex. 39.  On August 12, 2008, the state filed a response. ECF Dkt. #5, Ex. 40.  On August 18, 2008, Petitioner filed a reply.  ECF Dkt. #5, Ex. 41.  On August 29, 2005, the Lake County Court of Common Pleas denied Petitioner's motion.  ECF Dkt. #5, Ex. 42.

### H.        Motion to Vacate the Void Judgment

On December 12, 2008, Petitioner filed a motion in the Lake County Court of Common Pleas to vacate his judgment.  ECF Dkt. #5, Ex. 43.  On February 19, 2009, the court denied his motion. ECF Dkt. #5, Ex. 44.

On March 13, 2009, Petitioner filed a notice of appeal.  ECF Dkt. #5, Ex. 45.  On June 22, 2009, the state filed a response brief.  ECF Dkt. #5, Ex. 46.  On July 9, 2009, Petitioner filed a reply. ECF Dkt. #5, Ex. 47.  On July 21, 2009, the Eleventh District Court of Appeals issued a judgment entry noting procedural defects in Petitioner's brief and granted him leave to attempt to cure the defects. ECF Dkt. #5, Ex. 48.  On August 3, 2009, Petitioner filed another brief on the merits, raising the following assignments of error:

> I.    TRIAL COURT JOE GIBSON ABUSED HIS DISCRETION BY DISMISSING LOVE'S COMMON LAW MOTION TO VACATE HIS VOID SENTENCE WITHOUT DETERMINING WHETHER OR NOT LOVE'S SENTENCE IS VOID OR VOIDABLE, OR IF THE COURT/STATE ESTABLISHED PERSONAM (PERSONAL) AND/OR SUBJECT MATTER JURISDICTION OVER LOVE.
>
> II.   THE STATE'S PROSECUTION COMMITTED FRAUD UPON THE COURT WHEN THE STATE'S PROSECUTION SOUGHT TO AMEND AN ALREADY VOID INDICTMENT BY CONSTRUCTIVELY ADDING AN OFFENSE OF VIOLENCE ALREADY INCORPORATED WITHIN THE

DEFINITION OF §2903.02(B) AS A COURT OF CRIMINAL CONDUCT, AS HAVING §2903.11(A)(2) OF THE OHIO REVISED CODE WHICH IS AN ALLIED OFFENSE OF SIMILAR IMPORT TO §2923.02.  THIS AMENDMENT CHANGED THE FACE AND IDENTITY OF THE CRIME CHARGED IN THE INDICTMENT, TOOK AWAY LOVE'S RIGHT TO FAIR NOTICE OF THE CHARGE AND BECAME DUAL ACTS OF THE SAME OFFENSE TO COUNT TWO, WHERE THE STATE LACKED THE SUBJECT-MATTER JURISDICTION TO ACT MAKING THE INDICTMENT MILTIPLICIOUS AND A CONVICTION A CONTRADICTION.

ECF Dkt. #5, Ex. 49.  On September 1, 2009, the state filed a response.  ECF Dkt. #50.  On September 14, 2009, Petitioner filed a reply.  ECF Dkt. #5, Ex. 51.  On September 30, 2009, the appellate court affirmed the trial court's judgment denying Petitioner's Motion to Vacate the Void Judgment.  ECF Dkt. #5, Ex. 52.  On October 13, 2009, Petitioner filed a motion in the appellate court to certify a conflict to the Supreme Court of Ohio.  ECF Dkt. #5, Ex. 53.  On October 16, 2009, Petitioner filed a response.  ECF Dkt. #5, Ex. 54.  On October 26, 2009, Petitioner filed a reply.  ECF Dkt. #5, Ex. 55.

On November 9, 2009, Petitioner filed a notice of appeal.  ECF Dkt. #5, Ex. 56.  Petitioner filed a memorandum in support of jurisdiction, raising the following propositions of law:

I.    R.C. 2903.02(A) Murder and R.C. 2903.02(B) Felony-Murder are allied offenses of similar import.

II.   When a trial court allows attempted murder which is an allied offense to felonious assault, to be attached as a predicate offense to R.C. 2903.02(A) murder with a firearm specification despite already having R.C. 2903.11(A)(2) as a predicate offense to R.C. 2903.02(B), the court has effectively created a duplicate charge to R.C. 2903.02(B) Felony-murder, to which the state does not have the jurisdiction to act.

III.  The state must prove the predicate offense of violence felonious assault with a deadly weapon was the intended crime committed beyond a reasonable doubt before a conviction can be obtained for R.C. 903.02(B) felony-murder.  As felonious assault was the element of the crime needed to convict Love of felony-murder.

IV.  When the state believes the evidence presented to the jury could reasonably find against the state and for the accused upon one or more elements of the crime[s] charged, a charge upon the lesser included offense of manslaughter is required.

ECF Dkt. #5, Ex. 57.  On February 10, 2010, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #5, Ex. 58.

I.      **Motion to Compel Trial Court to Revise Sentence**

On August 12, 2009, Petitioner filed a motion in the Lake County Court of Common Pleas to compel the trial court to revise his sentence and journal entry to be in compliance with O.R.C. 2505.02 and Crim. R. 32(c). ECF Dkt. #5, Ex. 59. On August 13, 2009, the state filed a response. ECF Dkt. #5, Ex. 60. On August 17, 2009, the Lake County Court of Common Pleas denied Petitioner's motion. ECF Dkt. #5, Ex. 61. On October 6, 2009, Petitioner filed a document in the Eleventh District Court of Appeals, captioned "Appeal From the Judgment of Trial Court Joseph Gibson's Failure to Make Mr. Love's Sentence and Judgment be in Compliance with R.C. 2505.02 and Crim. R. 32(C) as Mandated by the Statutes and Laws under the State of Ohio." ECF Dkt. #5, Ex. 62. Petitioner raised the following assignments of error:

1.  TRIAL COURT JUDGE JOSEPH GIBSON FAILED TO HONOR O.R.C. 2505.02 AND CRIM. R. 32(c) AS MANDATED BY OHIO'S GENERAL ASSEMBLY REQUIRING THE SENTENCE TO REFLECT THE CONDUCT RELATED TO THE VERDICT. COUNT TWO OF MR. LOVE'S INDICTMENT DID REQUIRE A DETERMINATION OF GUILT AS TO THE LESSER INCLUDED OFFENSE OF VIOLENCE "FELONIOUS ASSAULT" WITH A DEADLY WEAPON O.R.C. 2903.11(A)(2). UPON A FINDING OF GUILT TO THE MURDER CHARGE FOR THE PURPOSES OF SENTENCING AS TO MAKE THE SENTENCE REFLECT THE CONDUCT OF O.R.C. 2903.02(b) A FAILURE TO DO SO GIVES RISE TO HAVING NO FINAL ORDER OF APPEAL.

2.  TRIAL COURT JUDGE JOSEPH GIBSON'S FAILURE TO HONOR MR. LOVE'S CRIM. R. 32(C) VIOLATION MOTION GIVES RISE TO PREJUDICE, AS LOVE'S PRIOR NEW TRIAL MOTION FILED APRIL 25, 2005 SHOULD HAVE RECOGNIZED AS HAVING VERY CLEAR MERITORIOUS CLAIM AS THE LAKE COUNTY PROSECUTOR (Gregory J. Mussman) EXPRESSED IN DEFINITIVE LANGUAGE THE STATE DID NOT MEET ITS "BURDEN OF PROOF" REQUIRED BY THE GENERAL ASSEMBLY, OHIO SUPREME COURT AND THE ELEVENTH DISTRICT COURT OF APPEALS. THIS EXPLANATION BY THE STATE AND JUDGMENT BY THE TRIAL COURT SHOWS MR. LOVE'S JUDGMENT TO BE "VOID" UNLESS, THE TRIAL COURT CAN SHOW THE JURY'S FINDING OF GUILT FOR THE UNDERLYING FELONY AND THE MERGING OF THESE TWO CHARGES MAKING THEM "ONE" CHARGE FOR THE FELONY MURDER PORTION OF O.R.C. 2903.02.

ECF Dkt. #5, Ex. 62. Respondent contends that it is not clear how this appeal was resolved. ECF Dkt. #5 at 16. However, Petitioner filed his notice of appeal on September 24, 2009. ECF Dkt. #5, Ex. 67. Petitioner apparently sought to appeal the Lake County Court of Common Pleas' ruling on

-10-

this matter as well as its ruling on a motion captioned "Crim. R. 32(C) Violation !!!!! Motion to Compel the Trial Court to Revise and Reissue Defendant's Sentence and Journal Entry to be in Compliance with R.C. 2505.02 and Crim. R. 32(C) as Mandated by the Laws of Ohio."  ECF Dkt. #5, Ex. 63.  The Lake County Court of Common Pleas denied this motion on September 11, 2009 (journalized September 14, 2009).  ECF Dkt. #5, Ex. 66.

On September 24, 2009, after the trial court issued both of its rulings (ECF Dkt. #5, Ex. 61, 66), Petitioner filed the ambiguous notice of appeal, discussed above.  ECF Dkt. #5, Ex. 67.  Notably, the notice appeared to reference both motions filed in the Court of Common Pleas.  *Compare* ECF Dkt. #5, Ex. 62, 63 *with* ECF Dkt. #67.  However, Petitioner captioned the notice of appeal with appellate case number 2009-L-040 (the appellate case number in connection with Petitioner's Motion to Vacate the Void Judgment).  *See* ECF Dkt. #5, Ex 67, *see also* §II(H), above.  The notice did not specifically identify the trial court rulings by, for example, citing the dates of the trial court rulings or appending copies of the entries.

On November 12, 2009, the appellate court noted that it believed Petitioner was appealing the trial court's entry of September 14, 2009.  ECF Dkt. #5, Ex. 68.  The appellate court made no mention of or reference to the August 17, 2009 ruling.  *Id.*  The appellate court instructed the clerk of courts to issue a new case number, and the case was assigned case number 2009-L-154.  *Id.*

By the time the appellate court issued its order on November 12, 2009, Petitioner had already filed a brief on the merits in case number 2009-L-040.  ECF Dkt. #5, Ex. 62.  Following the appellate court's order of November 12, 2009, Petitioner did not correct the case number on this brief or clarify the scope of his appeal.  Ultimately, the appellate court dismissed his appeal in case number 2009-L-154 for failure to prosecute.  ECF Dkt. #5, Ex. 69.  The court took no further action on the brief filed in appellate case number 2009-L-040 (ECF Dkt. #5, Ex. 62).  *See* Lake County Court of Common Pleas Docket:  https://phoenix.lakecountyohio.gov/pa/pa_cp.urd/pamw6500.display (search for Michael Love, and then view Dockets in case number 2009-L-040).

**J.    28 U.S.C. § 2254 Petition**

On November 5, 2009, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266,

-11-

270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison

authorities).  Petitioner raises the following grounds for relief:

**GROUND ONE:** Denial of Due Process of Law under the 5, 6 and 14 Amendments to the United States Constitution because I am actually innocent of these charges.

Supporting facts: I did not commit the crimes!  There is evidence that shows the victim was shot by a smaller caliber firearm that was not submitted at trial.  This information came in two (2) forms, One of which is the E.M.S. report that stated the wound inflicted came from the opposite side of the trial testimony and evidence; The autopsy, states the victim was shot by a smaller caliber firearm with the clear showing of the injury sustained also from the opposite side of the [sic] Love.

**GROUND TWO:** Denial of Due Process of Law under the 5, 6, and 14 Amendment to the United States Constitution when I was acquitted of the charge and then convicted of the same charge based on the same course of criminal conduct.

Supporting facts: I was indicted on Two Cts of the same offense with the same offense with the same firearm specification.  One of the Cts contained an additional element not included in the other "offense of violence".  At the close of trial, the state constructively amended the charge that did not include the additional element and gave it an "offense of violence" that described the same course of criminal conduct as the other Ct.

**GROUND THREE:** Ineffective Assistance of trial and appellate counsel for failure to investigate and present a defense noticable [sic] to defendant, state counsel, and trial court alike.

Supporting facts: Defense counsel was given evidence of fact to use in aiding in a defense.  Counsel (trial and appellate) never argued constitutional violations of state and federal in favor of counsel, thereby intentionally denying Love representation.

**GROUND FOUR:** Due Process of Law violation under the 5, 6, and 14 Amendment to the United States Constitution when the prosecution for the State violated the indictment of the grand jury when it made a constructive amendment at the end of the States case changing the identity of the charges.

Supporting facts: The Lake County Grand Jury indicted me on Two Cts and at the end of trial, I had a charge on my indictment that I had never heard about until the jury was reading the results to the court.

ECF Dkt. #1.  On April 30, 2010, Respondent filed a motion to dismiss the petition.  ECF Dkt. #5

On June 23, 3010, Petitioner filed a reply brief.  ECF Dkt. #7.  On August 30, 2010, Petitioner filed

a motion to stay proceedings and hold the instant petition in abeyance.  ECF Dkt. #8.  Respondent has not filed a brief opposing that motion.

### III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

#### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  Respondent contends that the instant petition is time-barred and should be dismissed.  ECF Dkt. #5 at 20-25.[3]

In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[3]    The heading of Respondent's argument reads "Love's Petition *Was* Timely Filed. . .";  however, it is clear from Respondent's argument that this is a typographical error and Respondent contends the petition is untimely.  *See* ECF Dkt. #5 at 20 (emphasis added).

-13-

(d)(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); see 28 U.S.C. § 2244(d)(2).  To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999).  Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period has expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling when a petitioner's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the petitioner's control.  *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000).  The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys*, 209 F.3d at 560-61; *Jurado*, 337 F.3d at 642.  When determining whether equitable tolling is appropriate, the court must consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap*, 250 F.3d at 1008; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002).  These factors are not comprehensive and not all of the factors are relevant in all cases.  *Cook*, 295 F.3d at 521.  Whether equitable tolling is appropriate is a case-by-case analysis.  *Id.*  "Absence of prejudice is a factor to be considered only

-14-

after a factor that might justify tolling is identified." *Allen v. Yukins*, 366 F.3d 396, 401-02, 404 (6th Cir. 2004). The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *Vroman*, 346 F.3d at 605.

### B. Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528;

-15-

(2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds, Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

> (1)    whether the petitioner failed to comply with an applicable state procedural rule;

-16-

(2)  whether the state courts actually enforced the state procedural sanction;

(3)  whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)  if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6ᵗʰ Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); Richey, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6ᵗʰ Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review; *Gall v. Parker*, 231 F.3d 265, 310 (6ᵗʰ Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6ᵗʰ Cir. 2000)(where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6ᵗʰ Cir. 2004). A state's res judicata rule barring post-conviction claims which could have been raised on appeal is an adequate and independent ground for *Maupin* purposes. *White v. Mitchell*, 431 F.3d 517, 527 (6ᵗʰ

-17-

Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 628 (6ᵗʰ Cir. 2003).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9ᵗʰ Cir. 1984), cert. denied, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## IV.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

-18-

> (1)      resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.      Decisions of lower federal courts may not be considered.
>
> B.      Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C.      The state court decision may be overturned only if:
>
>       1.      It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

-19-

    2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509

-20-

U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.  ANALYSIS

### A.  Motion to Stay

Petitioner is requesting a stay because he claims to have recently discovered that the verdict form did not contain a finding for the mens rea element of the charge under O.R.C. § 2903.02(B).  ECF Dkt. #8.  Petitioner contends that he is going to submit a Motion to Terminate Judgment and Sentence and seek resentencing pursuant to Ohio Rule of Criminal Procedure 47.  *Id*.

A federal district court may stay federal habeas corpus proceedings in limited circumstances in order to allow a petitioner to exhaust unexhausted claims when he presents both exhausted and unexhausted grounds for relief in the petition.  *Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).  Issuing a stay is appropriate only when a district court finds that a petitioner has presented good cause for failing to exhaust the claims in state court, the unexhausted claims are not plainly meritless, and a petitioner has not engaged in intentionally dilatory litigation tactics.  *Id*. at 278.

The undersigned recommends that the Court deny Petitioner's motion for a stay of the instant case.  Petitioner has had ample opportunity to request and review the verdict forms and pursue this issue in the state courts.  Further, Petitioner has not identified a federal constitutional claim and relies only on state court precedent.  *See* ECF Dkt. #8 quoting *State v. Pelfrey*, 112 Ohio st.3d 422 at ¶14 (Ohio 2007).  To the extent Petitioner's claim can be construed as implicating the Federal Constitution, it is almost certainly barred by res judicata.  Since Petitioner failed to object to the

allegedly deficient verdict form at trial, Ohio's contemporaneous objection rule would preclude review by the appellate court.  *See State v. Williams*, 364 N.E.2d 1364, 1367 (Ohio 1977) ("This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.") *superseded on other grounds by State v. Gillard*, 533 N.E.2d 272 (Ohio 1988); *State v. Williams*, No. 05CA008804, 2006 WL 2395218 at *8 (Ohio App. 9 Dist., Aug. 21, 2006) ("[a]s Defendant failed to raise any objection below, let alone an objection specifically raising a constitutional challenge, he is precluded from raising such an argument for the first time on appeal.").  Not only did Petitioner fail to object at trial, but he failed to raise this claim on direct appeal and at any time during the 8 year period that elapsed between his direct appeal and the filing of the instant petition.  There is no reason to grant the stay in the instant case because Petitioner has had a full opportunity to pursue state court remedies and failed to do so.  *See Rhines*, 544 U.S. at 277 ("stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court").

For these reasons, the undersigned recommends that the Court DENY Petitioner's motion to stay.  ECF Dkt. #8.

### B.    Statute of Limitations

Respondent first contends that the instant petition is time-barred.  ECF Dkt. #5 at 20-25.  In this case, the Eleventh District Court of Appeals affirmed Petitioner's conviction on May 14, 2001.  ECF Dkt. #5, Ex. 11. Petitioner had 45 days in which to seek timely review in the Supreme Court of Ohio, but he did not do so.  *See* S. Ct. Ohio. R. Prac. 2.2(A)(1).  Instead, Petitioner filed a delayed motion to reopen his appeal.  Such a motion, if granted, can delay the finality of a conviction. *Jimenez v. Quarterman*, 129 S.Ct. 681, 686 (2009).  In this case, the appellate court denied the motion.  ECF Dkt. #5, Ex. 27-35.  Therefore, the holding in *Jimenez* does not apply.  Instead, the holding from *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) applies: "although the filing of the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the

statute to begin running anew when the state court denied the motion." *See also Foster v. Bobby*, No. 07-CV-1303, 2010 WL 1524484 at *3 (N.D.Ohio Apr. 15, 2010), slip op (*Jimenez* does not apply when a motion for leave to file a delayed appeal is denied).

Since Petitioner's motion for leave to reopen his appeal was denied, his conviction became final on 45 days after May 14, 2001, which was June 28, 2001. The AEDPA statute of limitations began to run the next day and expired on June 29, 2002. Therefore, over a year elapsed before April 26, 2006, the date on which Petitioner first attempted to challenge his conviction following the conclusion of direct appeal. ECF Dkt. #5, Ex. 12. Since Petitioner's motion for a new trial was filed after one year, the Court need not consider whether it or any other motion tolled the AEDPA statute of limitations. His petition should be considered untimely and not subject to federal review unless equitable tolling or the actual innocence exception applies.

Petitioner contends that he is entitled to equitable tolling due to the manner in which appellate counsel and the state public defender's office handled his case. ECF Dkt. #7, at 11-15, 19. It is first important to note that "the right to appointed counsel extends to the first appeal of right, and no further." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991). Further, Petitioner cannot establish cause based on counsel's actions following his first appeal of right. *See Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2005) ("any errors of a post-conviction attorney, acting as the agent for his client, are attributable solely to that client."); *see also Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 425-26 (6th Cir.2003). Additionally, Petitioner has not shown reasonable diligence. He claims that he attempted to contact his appellate attorney through "two years of mail and phone tag" and when he learned that the attorney would not represent him following direct appeal, he spent 2 ½ years more writing letters in attempt to contact the public defender's office. ECF Dkt. #8 at 11-12. Notwithstanding these claims, Petitioner filed nothing with the state or federal courts for approximately five years following the conclusion of his direct appeal. He did not preserve his appeals to toll the AEDPA filing period and he did not file a federal habeas petition. Petitioner does not contend or demonstrate that he lacked actual or constructive notice of the federal AEDPA filing requirement. Further, Petitioner was aware of the factual predicate of his claim. Consequently, there

-23-

is no apparent reason for Petitioner's delay in filing his federal habeas petition and equitable tolling should not apply.  *See Ross v. Eberlin*, 2008 WL 1931264 at *9 (N.D. Ohio May 1, 2008), unreported; *Bolton v. Berghuis*, Case No. 05-1358, 164 Fed.Appx. 543, 2006 WL 92845 at **6 (6th Cir. Jan 13, 2006), unreported.

Petitioner also asserts a claim of actual innocence.  Claims of actual innocence are not cognizable as stand-alone constitutional claims, but do permit consideration of otherwise time-barred claims.  *See Herrera v. Collins*, 506 U.S. 390, 416-17(1993) ("Our federal habeas cases have treated claims of 'actual innocence,' not as an independent constitutional claim. . . "); *Sitto v. Lafler*, 279 Fed.Appx. 381, 2008 WL 2224862 (6th Cir. May 28, 2008), unreported ("we continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review."); *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005).  To the extent the Court wishes to address actual innocence from a statute of limitations standpoint, the undersigned offers the following analysis.

The Sixth Circuit has held that the Constitution requires an actual innocence exception to AEDPA's statute of limitations.  *Souter*, 395 F.3d at 599.  The Southern District of Ohio has aptly summarized the burden for establishing actual innocence:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway [the AEDPA statute of limitations] and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "**To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence**-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321.

*Medina v. Wolfe*, No. 2:06-CV-921, 2007 WL 2323381 at *9, slip op. (S.D. Ohio Aug. 9, 2007) (emphasis added).  This Court and other jurisdictions have held that evidence that was available at

the time of trial cannot be considered in ruling upon a claim of actual innocence. *See Rickard v. Wolfe*, No. 3:06-CV-2753, 2007 WL 4526522, *slip op*. at \*6, \*15 (N.D. Ohio Dec. 17, 2007); *Leggett v. U.S.*, Nos. 1:05CV732, 1:92CR233, 2006 WL 3091316, *slip op*. at \*2 (N.D. Ohio Oct. 27, 2006); *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004); *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir.2005) ("Evidence is only new [for actual innocence purposes] if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.") (internal quotations omitted); *Cooper v. Brown*, 510 F.3d 870, 969-70 (9th Cir. 2007).

In this case, Petitioner contends that he is actually innocent and he supports his claim by referring to a coroner's report and an EMT report describing the path of the bullet and the coroner's report. ECF Dkt. #7 at 18. Petitioner also contends that the autopsy revealed that the victim was shot by a smaller caliber firearm than the .380 that he allegedly used. ECF Dkt. #1 at 6. Petitioner has made no showing that this evidence was not available at trial or could not have been discovered through the exercise of due diligence. Even if these reports were not available, Petitioner has not shown that counsel was prevented from otherwise learning of the size and orientation of the entry and exit wounds prior to trial by, for example, viewing photographs of the victim or interviewing the coroner. *See, e.g., Jones v. Bagley*, Case No. C-1:01-cv-564, 2010 WL 654287 at \*52 (S.D.Ohio, Feb 19, 2010), slip op. ("there was testimony given during the evidentiary hearing by [defense] attorney Sanks that after they received the coroner's report 'we went up and interviewed the coroner who did the post and we talked to him quite at length about the report and what he found and why he made his decisions that he made.' "). Therefore, the evidence presented should not form a basis for an actual innocence claim that would permit review of an otherwise time-barred claim.

Since the instant petition is time-barred and equitable tolling and the actual innocence exception do not apply, the undersigned recommends that the Court dismiss the instant petition in its entirety with prejudice.

### C.    Procedural Default

Respondent also argues that Grounds Two, Three, and Four are procedurally defaulted because Petitioner did not present them at trial or on direct appeal. ECF Dkt. #5 at 27. Petitioner

does not appear to dispute that the first and second prongs of the *Maupin* test are satisfied with respect to these grounds. *See* ECF Dkt. #7 at 15. Nevertheless, the undersigned notes that Petitioner did in fact fail to properly raise in state courts the claims now presented in Grounds Two, Three, and Four. In Ground Two, Petitioner contends that he was acquitted of one charge and then convicted of the same charge based on the same course of criminal conduct; in Ground Three, he alleges that he received ineffective assistance of trial and appellate counsel for failing to investigate and present a defense; and in Ground Four, that the prosecution improperly amended the indictment at the end of trial. ECF Dkt. #1.

Turning to the *Maupin* test, the first prong considers whether the petitioner failed to comply with an applicable state procedural rule. Here, Grounds Two and Four required Petitioner to raise objections at trial. As noted above, Ohio courts require defendants to raise objections providing the trial court with an opportunity to remedy an error at the time of trial; otherwise, the alleged error is waived on appeal. *See Williams*, 364 N.E.2d at 1367, *supra*; *Williams*, 2006 WL 2395218 at *8, *supra*. Accordingly, Petitioner's failure to present the claims presented in Grounds Two and Four constitutes a failure to comply with a procedural rule.

With respect to Ground Three, Petitioner raised claims of ineffective assistance of counsel on his petition for post conviction relief and his delayed motion to reopen appeal, but those filings were untimely. *See* ECF Dkt. #5, Ex. 21 at 2-3, 30 at 5. Petitioner also raised a claim of ineffective assistance of trial counsel on his timely direct appeal, but that claim differs from the claims presented here. On direct appeal, Petitioner argued that trial counsel was ineffective for failing to prepare, failing to object, and not issuing subpoenas for witnesses. ECF Dkt. #5, Ex. 9 at 10. Specifically, Petitioner contended that trial counsel failed to subpoena Beatrice Naylor, Linda Gipson, Kiyana Aston, Lisa Dunlap, and "Corranci." *Id*. at 11. Petitioner also contended that counsel issued a subpoena for Barbara Adeyemi, but failed to call her to testify. *Id*. Petitioner then asserted that trial counsel was not prepared to assert a claim of self-defense because he did not properly pose questions to Petitioner, Petitioner's testimony was inconsistent, and defense counsel did not know the law pertaining to self-defense. *Id*. at 12-13. Lastly, Petitioner raised a number of cursory arguments,

-26-

including: defense counsel failed to object and "Jury instructions were ill-prepared by the defense. Appropriate requests for inclusion of lesser included offenses were not made. . . The theory of defense was inconsistent and undeveloped." *Id.* at 10. These arguments were not supported by citations to the record or case law.

In the case before this Court, the Petition makes no mention of failure to call the aforementioned witnesses, a failure to prepare a self-defense claim, or a failure to object. *See* ECF Dkt. #1. To the contrary, the petition contends that Petitioner could not have fired the gun that killed the victim. In his traverse, Petitioner alleges that trial counsel failed to investigate forensic evidence related to the relative size of the bullet wounds. ECF Dkt. #7 at 24. Petitioner even acknowledges that the issues in the current petition are different than those raised on direct appeal. *See* ECF Dkt. #7 at 25 ("It appears that Respondent is addressing Petitioner's Direct Appeal issues, rather than the ineffective claims made in petitioner's Application to Reopen his Appeal for failure to raise the ineffectiveness of trial counsel's failure to prepare and failure to call expert witnesses."). Accordingly, the undersigned recommends that the Court find the issues in the instant petition to differ from those raised on the timely direct appeal and that the issues in the instant petition to be procedurally barred under Ohio law. *See* ECF Dkt. #5, Ex. 21 at 2-3, 30 at 5.

With regard to the second prong of *Maupin*, it is clear that the Ohio courts enforced the procedural requirements. The courts issued multiple orders explicitly stating that Petitioner failed to raise claims at trial and that he failed to file timely appeals raising the issue of ineffective assistance of counsel. *See* ECF Dkt. #5, Ex. 11, 21, 30. To the extent Petitioner states claims that were never fairly presented to the state courts, the Court can find that they are procedurally defaulted. *See Lorraine v. Coyle*, 291 F.3d 416, 447, (6th Cir. 2002) ("To begin, this claim was not raised in the state courts or in the district court. It is therefore both procedurally defaulted and waived.")

Turning to the third prong of *Maupin*, the Court considers  whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review. Here, Petitioner contends that a dismissal of an untimely Rule 26(B) application is not an adequate and independent state bar because Ohio courts do not regularly enforce it. ECF Dkt. #7 at 15 citing

*Franklin v. Anderson,* 434 F.3d 412 (6th Cir. 2006).  In *Franklin*, the Sixth Circuit observed that "the Ohio Supreme Court has been erratic in its handling of untimely Rule 26(B) applications *in capital cases.*"  *Franklin*, 434 F.3d at 420 (emphasis added).  In non-capital cases following 2002, a denial of a Rule 26(B) motion as untimely has been held to be an adequate and independent state procedural ground to foreclose federal review.  *Monzo v. Edwards,* 281 F.3d 568, 576-79 (6th Cir. 2002).  Therefore, Ground Three satisfies the third prong of *Maupin*.  Although Petitioner does not appear to take issue with the third prong of *Maupin* as it pertains to Grounds Two and Four, the undersigned notes that Ohio's doctrine of res judicata is an adequate and independent ground justifying procedural default.  *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006).

The Court must consider cause and prejudice under the fourth prong of *Maupin*.  Again, Petitioner asserts that the actions of counsel constitute cause for his default.  *See* ECF Dkt. #7 at 11-15, 19.  As discussed above under the analysis for the AEDPA statute of limitations, Petitioner was not entitled to assistance of counsel following his first appeal of right.  Therefore, any errors by counsel following that appeal do not constitute cause excusing his default.

Lastly, the Court must again consider actual innocence in the context of procedural default.  *See Dretke v. Haley*, 541 U.S. 386, 388 (2004).  As stated above, Petitioner has failed to establish a meritorious claim of actual innocence supported by newly discovered evidence.  *See Abdus-Samad*, 420 F.3d at 624 ("Abdus-Samad asserts that his actual innocence can excuse his procedural default. . .The standard for evaluating Abdus-Samad's actual-innocence claim is whether, in light of the new evidence, it is more likely than not that 'no reasonable juror' would have convicted him.") (internal quotation omitted).

For the foregoing reasons, the undersigned recommends that the Court dismiss Grounds Two, Three, and Four with prejudice due to procedural default.

**D.      Cognizability of Ground One**

Petitioner states in Ground One that he is actually innocent of the crimes charged.  ECF Dkt. #1.  In the traverse, he contends that Ground one asserts a claim of ineffective assistance of trial

counsel based upon a failure to prepare an adequate defense.  ECF Dkt. #7 at 22.  The undersigned disagrees with Petitioner.  The plain language of the petition sets forth a stand alone actual innocence claim and makes no mention of trial counsel.  *See* ECF Dkt. #1 at 6.  Nevertheless, insofar as Ground One purports to state a claim based upon ineffective assistance of trial counsel, it is both time-barred and procedurally defaulted for the reasons set forth in Sections V.B., C., above.

To the extent that Ground One states a stand alone ineffective assistance of counsel claim, the undersigned recommends that the Court dismiss the Ground as non-cognizable.  *Herrera*, 506 U.S. at 416-17;  *Sitto*, 2008 WL 2224862; *Souter*, 395 F.3d at 599.

## VI.  CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice and DENY his motion to stay.

DATE:  November 2, 2010                    *s/ George J. Limbert*
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).